**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-00159-GCM**

| | |
|---|---|
| **AMERICAN RELIABLE INSURANCE COMPANY,**<br>                                          **Plaintiff,**<br>v.<br>**FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC.,**<br>                                          **Defendant.** | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

**NOW COMES**, American Reliable Insurance Company ("American Reliable") and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of this Court, and files this, its Memorandum in Support of its Motion for Summary Judgment.

**I.     Introduction**

This declaratory judgment action involves two commercial general liability policies (collectively the "American Reliable Policy" or the "CGL Policy")[1] issued by American Reliable to D.A. Stuart ("Stuart"). *See, generally*, [Doc. 1], [Doc. 2] and [Doc. 3]. In limited situations, Five Brothers Mortgage Company Services and Securing, Inc. ("Five Brothers") qualifies as an additional insured under the American Reliable Policy. *See*, [Doc. 2] at p. 41, Section II.B.1. ("Contractors Additional Insured Endorsement with Products-Completed Operations Coverage" (Form CG 80 13 11 04)). Based on this conditional additional insured status,[2] Five Brothers demanded defense and indemnification from American Reliable in the litigation styled *RoundPoint Mortgage Servicing Corporation v. Five Brothers Mortgage Company Services and Securing,*

---

[1] Because the two policies contain the same pertinent language, American Reliable will refer to the two policies in the singular form and will only cite to one policy.

[2] While American Reliable does not concede that Five Brothers qualifies as an additional insured, for purposes of this Motion for Summary Judgment, American Reliable will treat Five Brothers as an additional insured.

*Inc,"* Civil Action No. 3:15-cv-00559 (the "RoundPoint Suit") currently pending in the Western District of North Carolina.

American Reliable seeks a declaratory judgment from this Court that it owes no duty of defense or indemnification to Five Brothers in the RoundPoint Suit.[3]

## II. Statement of Undisputed Facts

On or about November 18, 2015, RoundPoint filed suit in the United States District Court for the Western District of North Carolina against Five Brothers asserting a claim against Five Brothers for breach of contract and seeking actual damages, attorneys' fees, and costs in an amount in excess of $75,000 stemming from the defense of the Hayes Suit.[4] *See*, [Doc. 1] at ¶15 and [Doc. 11] at ¶15. In its complaint, RoundPoint specifically alleges that it seeks indemnity for losses it incurred to defend itself against allegations asserted by Annette Hayes. *Id.* On or about December 5, 2015, Five Brothers requested a defense and indemnification from Stuart related to the RoundPoint Suit. *See*, [Doc. 1] at ¶16 and [Doc. 11] at ¶16.

The court in the RoundPoint Suit entered an order on RoundPoint's motion for summary judgment on June 23, 2017. *See*, *RoundPoint Mortgage Servicing Corp. v. Five Brothers Mortgage Co. Services and Securing, Inc.*, 3:15-cv-00559-RJC-DCK, 2017 WL 2722304 (W.D.N.C. June

---

[3] American Reliable notes that it has provided a defense to Five Brothers in the RoundPoint Suit under a reservation of rights. As indicated *infra*, the RoundPoint suit recently concluded a bench trial with the parties currently waiting on the court's ruling on damages. As such, the primary issue here is the duty to indemnify.

[4] On August 26, 2013, Annette Hayes filed a complaint in Superior Court in Durham County, which was subsequently removed to the United States District Court for the Middle District of North Carolina, styled "*Annette Hayes v. Self-Help Services Corporation d/b/a Self-Help Credit Union; RoundPoint Mortgage Servicing Corporation; Five Brothers Mortgage Company Services and Securing, Inc.; and Douglas Allan Stuart d/b/a D. A. Stuart*, Civil Action No. 1:13-cv-880 (the "Hayes Suit") alleging a total of nineteen causes of action against RoundPoint, Five Brothers, and Stuart in various combinations. *See*, [Doc. 1] at ¶12 and [Doc. 11] at ¶12.

23, 2017) (slip copy). Importantly, Five Brothers was a party to the RoundPoint Suit and fully participated in the summary judgment briefing.[5] *Id.* at *1 ("This matter comes before the Court on [RoundPoint's] Motion for Summary Judgment; [Five Brothers'] Opposition to [RoundPoint's] Motion; [RoundPoint's] Reply in Support of its Motion; and all the associated exhibits."). Additionally, the court heard oral arguments on the motion for summary judgment. *Id.* at *3.

The court notes that RoundPoint sent two demand letters to Five Brothers for indemnity in the Hayes Suit, but "Five Brothers refused to indemnify RoundPoint . . .." *Id.* at *3. The court further commented that RoundPoint and Five Brothers "dispute which party should pay for which legal fees pursuant to a contract between the two of them and the indemnification clause therein." *Id.* With that in mind, the court stated that the "heart of this dispute is not whether Five Brothers breached the Contract–even Five Brothers seems to admit that it owes some indemnification to RoundPoint–rather, the Parties disagree regarding which claims in the Hayes Litigation require indemnification . . .." *RoundPoint Mortgage*, 3:15-cv-00559-RJC-DCK, 2017 WL 2722304 at *4.

While Five Brothers did not necessarily dispute that it owed some indemnification to RoundPoint, the court nevertheless provided an analysis and discussion regarding whether Five Brothers breached its contract with RoundPoint. The court stated that there "is no dispute as to whether there was an agreement and whether RoundPoint performed its duties under the Contract. Furthermore, it is clear that RoundPoint suffered damages if it was entitled to indemnification . .

---

[5] Five Brothers is precluded from re-litigating the issue of breach of contract in this litigation pursuant to the doctrine of "collateral estoppel." "Applying collateral estoppel 'forecloses the relitigation [*sic*] of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate.'" *In re Microsoft Corp. Anittrust Litgation*, 355 F.3d 322, 326 (4th Cir. 2004) (quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (second bracket in original).

.." *Id.* The RoundPoint court concluded that "*Five Brothers has breached the indemnification clause and RoundPoint is entitled to damages as a matter of law*." *Id.* (emphasis added).

With these undisputed facts in mind, the question becomes, does American Reliable owe Five Brothers defense and indemnity in the RoundPoint Suit?

### III. Relief Sought

American Reliable seeks a declaratory judgment from the Court that it has no obligation to defend or indemnify Five Brothers with respect to the RoundPoint Suit.

### IV. General Principals Governing Policy Interpretation

The following principals are pertinent to this summary judgment motion:

*1. Choice of Law*

The North Carolina Supreme Court summarized the choice-of-law rules pertaining to insurance contracts as follows: "the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the policy contract." *Fortune Insurance Co. v.* Owens, 526 S.E.2d 463, 466 (N.C. 2000). Additionally, N.C. Gen. Stat. § 58-3-1 states: "All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof." Under § 58-3-1, an insurance policy delivered out of state may still be construed by the courts under North Carolina law if the policy insures "property, lives, or interests" within the State. *See, e.g.*, *Collins & Aikman Corp. v. Hartford Accident & Indemnity Co.*, 416 S.E.2d 591, 593 (N.C. 1992). The CGL Policy was formed and delivered in North Carolina, and they insured interests in the state of North Carolina. As such, North Carolina law applies to interpretation of the CGL Policy.

2. *Policy Interpretation*

Insurance policies are construed in accordance with traditional rules of contract interpretation, so where the meaning of the policy is clear and only one reasonable interpretation exists the courts must enforce the contract as written. *Patrick v. Wake County Dep't of Human Servs.*, 655 S.E.2d 920, 924 (N.C. 2008). "As with all contracts, the object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 612 (N.C. 2010) (citation and internal quotation marks omitted). The language of the policy "is the clearest indicator of the parties' intentions." *Metropolitan Prop. and Casualty Ins. Co. v. Lindquist*, 463 S.E.2d 574, 576 (N.C. 1995). Where the policy is unambiguous, "[i]t must be presumed the parties intended what the language used clearly expresses, and the [policy] must be construed to mean what on its face it purports to mean." *Hartford Acc. & Indemnity Co. v. Hood*, 40 S.E.2d 198, 201 (N.C. 1946) (internal citations omitted).

An insured bears the burden of "bringing itself within the insuring language of the policy." *Hobson Constr. Co. V. Great Am. Ins. Co.*, 322 S.E.2d 632, 635 (N.C. Ct. App. 1984). Once an insured demonstrates that the insuring language embraces the particular claim or injury, the burden shifts to the insurer to prove that the policy excludes the particular injury from coverage. *Id.* "Exclusionary clauses are interpreted narrowly while coverage clauses are interpreted broadly to provide the greatest possible protection to the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 71 (N.C. 1986).

3. *Duty to Defend*

In North Carolina, the pleadings control the duty to defend. *Waste Management of Carolinas, Inc. v. Peerless Insurance Company*, 340 S.E.2d 374, 377 (N.C. 1986). To that end, the

North Carolina Supreme Court stated: "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* (citations omitted). Accordingly, North Carolina courts employ a "comparison test," reading the pleadings in the context of the policy language to determine whether the insurer had a coverage obligation, noting the well-establish principle under North Carolina coverage law: "Any doubt as to coverage is to be resolved in favor of the insured." *Id.* (citations omitted). That being said, "if the facts are not even arguably covered by the policy, then the insurer has no duty to defend." *Id.* at 378 (citations omitted).

   4. *Duty to Indemnify*

While the duty to defend relies on the factual allegations of the complaint, the duty to indemnify "is measured by the facts ultimately determined at trial." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 692 S.E.2d 605, 610 (citations omitted). Thus, "in determining whether an insurer has a duty to indemnify, the facts as determined at trial are compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as found by the trier of fact, then the insurer has a duty to indemnify." *Id.* at 611.

**V.     Argument**

One of the issues in this case is Five Brothers' demand for coverage from American Reliable as an additional insured–with said status as an additional insured being a condition precedent to coverage. As stated in footnote two, American Reliable disputes Five Brothers' contention that it qualifies as an additional insured under the CGL Policy. While American Reliable assumes Five Brothers' additional insured status for purposes of this motion, if Five Brothers raises the issue of its additional insured status, American Reliable reserves the right to argue this issue. However, as explained herein, even if Five Brothers does qualify as an additional

insured, American Reliable owes no duty to defend or indemnify Five Brothers because here are no allegations or findings of personal injury, there are no allegations or findings of property damage, and there are no allegations or findings that qualify as an "occurrence". Additionally, the "expected or intended injury" exclusion serves to exclude coverage in this matter. As such, the Court should grant American Reliable's motion for summary judgment.

> 2. *Assuming Five Brothers qualifies as an additional insured, the claim for breach of contract set forth in the RoundPoint suit does not constitute "personal injury" or "property damage" such that there is no coverage under the CGL Policy*

American Reliable's policy states that the insurance applies to "bodily injury" and "property damages" caused by an "occurrence." [Doc. 2] at p.5, Section I.1.b.(1). The CGL Policy further defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id*. at p. 17, Section V.3. "Property damages" is defined as,

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that cause it.
>
> For the purposes of this insurance, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

[Doc. 2] at p. 18, Section V.13

RoundPoint neither alleged nor did the court find any personal injury or property damage in the RoundPoint Suit. *See, generally*, [Doc. 6]. Instead, RoundPoint's claim and the court's judgment is solely for money damages.

This case is analogous to *Westfield Insurance Co. v. Nautilus Insurance Company*, 154 F.Supp.3d 259 (M.D.N.C. 2016). In *Westfield*, a water remediation company sued a general contractor for breach of contract for failure to pay an invoice. The general contractor tendered a demand as an additional insured to the carrier for the subcontractor whose alleged negligence caused the water intrusion that necessitated the services of the water remediation company. *Westfield*, 154 F.Supp.3d at 262. In response to the demand, the carrier noted that, while the general contractor was an additional insured, the claim asserted by the water remediation company was for the breach of contract and was not covered under the policy. *Id.* at 262–63.

After a settlement with the remediation company, the general contractor's carrier sought indemnification from the subcontractor's carrier for the settlement and defense costs *via* a declaratory judgment action. *Id.* at 263. Ruling on competing summary judgment motions, the court held that although the water remediation company's work *was related to* "property damage," the remediation company *did not suffer* "property damage," and, therefore, was not seeking damages because of property damage. *Westfield*, 154 F.Supp.3d. at 267. Instead, the damages it sought arose out of the general contractor's non-accidental failure to honor its contractual obligations (*i.e.* pure economic loss) by failing to pay for services rendered. In sum, the court held that the suit was for losses that did not constitute "property damage" caused by an "occurrence" to trigger a duty to defend. *Id.* at 267– 268 (citations omitted). In other words, while the original contract between the remediation company and the general contractor could be "traced to the property damage", the "subsequent breach of contract represents a separate and independent act severing the causal connection with the [property damage]." *Westfield*, 154 F.Supp.3d at 271.

Applying the court's reasoning in *Westfield* to the facts presented here, RoundPoint's claim for breach of contract is not "property damage". Because the underlying suit does not state claims

for "personal injury" or "property damage", American Reliable has no duty to defend Five Brothers. Similarly, there is no finding of fact amounting to "personal injury" or "property damage" in the RoundPoint court's order. With these facts, the plain language of American Reliable's Policy does not provide defense coverage to Five Brothers.

> 3. *Assuming Five Brothers qualifies as an additional insured, the claim for breach of contract set forth in the RoundPoint suit does not constitute an "occurrence" such that there is no coverage under the CGL Policy*

Even assuming that Five Brothers qualifies as an additional insured, the claim for breach of contract set forth in the RoundPoint Suit does not allege an "occurrence" and the court's findings do not constitute an "occurrence" such that there is no coverage under the CGL Policy. American Reliable's policy states the insurance applies to "bodily injury" and "property damages" caused by an "occurrence." [Doc. 2] at p.5, Section I.1.b.(1). The CGL Policy further defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Doc. 2] at p. 18, Section V.13. Generally, where liability coverage arises from an "occurrence" defined as an accident, North Carolina courts interpret "accident" to mean an unforeseen event occurring without will or design of the person whose act causes it. *See, e.g.*, *Waste Management of Carolinas, Inc. v. Peerless Insurance Company*, 340 S.E.2d 374, 379 (N.C. 1986). Merely showing that the injury resulted from an intentional act (such as a breach of contract), however, is not always sufficient to exclude coverage. Rather, the term "accident" includes injuries flowing from intentional acts so long as the injury is not intentional or substantially certain to be the result of the intentional act. *See, e.g.*, *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 412 S.E.2d 318, 325 (N.C. 1992). That being said, "[c]onduct that is within the design and control of an insured and which leads to the foreseeable harm alleged by the victim, is not accidental." *Allstate Ins. Co. v. Bates*, 185 F. Supp. 2d 607, 611 (E.D.N.C. 2000).

> a. *The breach of contract allegation is not an "occurrence" for purposes of the duty to defend*

RoundPoint's allegation with regard to Five Brothers' alleged breach does not include any language indicating an accidental breach of contract; instead, RoundPoint alleges that "Five Brothers did not perform its obligations under the Contract" and that "Five Brothers refused RoundPoint's indemnification demand." *Id.* at ¶¶12 and 25, respectively. The RoundPoint suit alleges conduct that was within the design and control of Five Brothers with said conduct leading to the alleged damages suffered by RoundPoint. The alleged intentional conduct of Five Brothers, *i.e.* the failure or refusal to indemnify RoundPoint, is not an "accident" under North Carolina law; and, accordingly, there is no coverage to Five Brothers under the American Reliable Policy.

> b. *The breach of contract claim is not an occurrence for purpose of the duty to indemnify*

The RoundPoint Court unequivocally stated that "[a]fter RoundPoint sent two demand letters, Five Brothers *refused to indemnify* RoundPoint . . .." *RoundPoint Mortgage*, 3:15-cv-00559-RJC-DCK, 2017 WL 2722304 at *2 (emphasis added). There is nothing accidental about a refusal to indemnify. Instead, Five Brothers' actions were intentional and RoundPoint's damages were substantially certain to be the result of the intentional act. As such, there is no "occurrence" and there is no duty for American Reliable to indemnify Five Brothers in the RoundPoint Suit. *See, e.g.*, *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 412 S.E.2d 318, 325 (N.C. 1992).

> 4. *Assuming Five Brothers qualifies as an additional insured, the damages for breach of contract set forth in the RoundPoint are expected or intended injuries and are excluded from coverage under the CGL Policy*

The American Reliable Policy excludes from coverage "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured." [Doc. 2] at p. 6, Section I.2.a. First, as stated above, there are no allegations or findings of "bodily injury" or "property

damage". That being said, North Carolina courts analyze policy exclusion for "expected and intended" injury similar to determining when an event constitutes an "occurrence." Application of this exclusion is premised upon the actor intending both the act committed and the harmful result. *See*, *Nationwide Mut. Ins. Co. v. Abernethy*, 445 S.E.2d 618 (N.C. Ct. App. 1994). Yet, in certain instances coverage is precluded where the intentional act was sufficiently certain to cause the resulting injury even if that injury was not intended by the actor. *See, e.g.*, *Erie Ins. Exchange v. St. Stephen's Episcopal Church*, 570 S.E.2d 763 (N.C. Ct. App. 2002) and *N.C.Farm Bureau Ins. Co. v. Allen*, 553 S.E.2d 420 (N.C. Ct. App. 2001).

In the RoundPoint suit, RoundPoint alleges that due to Five Brothers' breach of an indemnity contract, RoundPoint suffered damages in the form of a settlement payment and attorneys' fees. *See, e.g.*, [Doc. 6] at p. 3, ¶¶13, 21, and 28. Additionally, as stated above, RoundPoint does not allege any accidental behavior on the part of Five Brothers as it relates to the breach of contract. Finally, the RoundPoint court made no findings of accidental conduct on the part of Five Brothers as it relates to the breach of contract. Instead, the court found that Five Brothers breached its contract and that RoundPoint suffered damages as a result. It does not take any stretch of the imagination to conclude that the expected result of refusing to indemnify a party pursuant to a contract is that said party will incur attorneys' fees and costs. Accordingly, coverage for the alleged breach of contract on the part of Five Brothers is excluded from coverage under American Reliable's policy.

VI.   **Conclusion**

The American Reliable Policy unequivocally does not provide coverage to Five Brothers because neither the complaint nor the court's findings involve "personal injury", "property damage", or an "occurrence"; and the RoundPoint Suit involves an "expected or intended" injury

excluding the suit from coverage. As such, American Reliable has no duty to defend or indemnify Five Brothers for any alleged damages associated with the RoundPoint Suit.

**This the 8th day of September, 2017.**

>   */s/LUKE P. SBARRA*
>   **NC State Bar No. 29429**
>   */s/SHELLEY W. COLEMAN*
>   **NC State Bar No. 22783**
>   **HEDRICK, GARDNER, KINCHELOE & GAROFALO, LLP**
>   **6000 Fairview Road, Suite 1000**
>   **Charlotte, NC  28210**
>   **PH:    (704) 366-1101**
>   **FAX:  (704) 366-6181**
>   lsbarra@hedrickgardner.com
>   scoleman@hedrickgardner.com
>   *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that I served the above document upon the parties in this action through the Court's CM/ECF filing system which provides notice and copy to all parties to include:

JEFFREY A. BUNDA
NC State Bar No. 34432
HUTCHENS LAW FIRM
6230 Fairview Road, Suite 315
Charlotte, NC 28210
jeff.bunda@hutchenslawfirm.com

This the 8th day of September, 2017.

                                                */s/SHELLEY W. COLEMAN*
                                                Shelley W. Coleman